Robert E. MATTHEWS, Appellee,

v.

FORD MOTOR COMPANY, a Delaware corporation, Appellant.

Robert E. MATTHEWS, Appellee,

v.

KIMNACH FORD, INC., a Virginia corporation, Appellant.

Nos. 72–2306, 72–2307.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1973.

Decided May 21, 1973.

Allan S. Reynolds, Norfolk, Va. (White, Reynolds, Smith & Winters, Norfolk, Va., on brief), for Ford Motor Co.

William E. Baggs, Norfolk, Va. (James A. Howard and Breeden, Howard & McMillan, Norfolk, Va., on brief), for Kimnach Ford, Inc.

Thomas J. Harlan, Jr., Norfolk, Va. (William L. Dudley, Jr., and Doumar, Pincus, Knight & Harlan, Norfolk, Va., on brief), for Robert E. Matthews.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

BUTZNER, Circuit Judge:

Alleging numerous errors, Ford Motor Company and Kimnach Ford, Inc. appeal from a judgment, entered on a jury verdict, for personal injuries suffered by Robert Matthews when his car went out of control as a result of a mechanical defect. Finding that no reversible error was committed during the trial and that Virginia law, which governs this diversity action, supports the liability of Ford and Kimnach, we affirm.

The evidence, viewed in the light most favorable to Matthews, disclosed the following facts: Matthews purchased the car, a 1968 Ford XL Galaxie 500, from Kimnach, an authorized Ford dealer, in April 1968. In November 1968, the vehicle shifted into reverse gear while traveling forward on a rough road. Matthews returned the car to Kimnach for repairs. The defect was in the gear shift selector mechanism, which Kimnach attempted to correct under the terms of the vehicle warranty. Less than two months later the car again inadvertently shifted into reverse, this time causing a collision that severely injured Matthews.

Eyewitnesses described the car's erratic movement. The testimony of experts supported Matthews' claim that Ford's defective design and assembly and Kimnach's improper repairs allowed the transmission to reverse unexpectedly. The trial judge submitted the case to the jury on theories of negligence and breach of warranty, and the jury returned a general verdict in favor of Matthews against both Ford and Kimnach.

Many of the assignments of error pertain to familiar principles of law and to questions which were solely the province of the jury. On these issues, we find extended discussion unnecessary. Examination of the record and consideration of the briefs and oral argument disclose no reversible error in the empaneling and instruction of the jury, the admission and exclusion of evidence, or the denial of motions for judgment. Further, the evidence of negligence amply supports the jury's verdict against both defendants in tort. *Cf.* Pierce v. Ford Motor Co., 190 F.2d 910 (4th Cir. 1951).

However, because the jury returned a general verdict, Ford and Kim-

nach argue that error in submitting Matthews' claim of breach of warranty to the jury requires reversal.[1] They rely on clauses in the contract of sale, which they assert are sufficient to disclaim liability. Since no Virginia case applying the sections of the Uniform Commercial Code that pertain to the contractual liability of a manufacturer and a dealer has been called to our attention, we will briefly state the reasons for our affirmance on this issue.[2]

The purchase order for Matthews' new car contained an express warranty.[3] In lieu of implied warranties, Ford warranted the car to be free from defects in material and workmanship for a period of twenty-four months or until it had been driven 24,000 miles, but the only remedy mentioned was replacement of defective parts free of charge. Matthews urges us to hold that Ford's exclusion of the implied warranties of merchantability and fitness is either ineffective or unconscionable under §§ 2–316 or 2–302 of the Uniform Commercial Code.[4] However, we need not consider this approach to the problem

1. The uncertainty caused by the general verdict is illustrated by the disparate effect of contributory negligence, which in Virginia is a defense to tort liability but not to breach of warranty. Consideration of Matthews' alternative claims probably would be unnecessary had the jury returned separate verdicts on the issues of negligence and breach of warranty, as allowed by Fed.R.Civ.P. 49(a).

2. The Supreme Court of Virginia has indicated that an action for personal injuries caused by breach of warranty should be based on the contract of sale and not on the doctrine of strict liability in tort. Brockett v. Harrell Bros., Inc., 206 Va. 457, 143 S.E.2d 897, 902 (1965); see Speidel, The Virginia "Anti-Privity" Statute: Strict Products Liability under the Uniform Commercial Code, 51 Va.L. Rev. 804, 817 (1965). While the theories of tort and contractual liabilities differ, the result of this case would likely have been the same had the principles of Restatement (Second) of Torts § 402A (1965) been applied. See Chestnut v. Ford Motor Co., 445 F.2d 967, 968 (4th Cir. 1971); cf. Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1964).

3. The following warranty appeared on the back of the purchase order:
    "There is no warranty, express or implied, made by either the Ford Motor Company or the selling Dealer on new Ford vehicles except the following direct Company vehicle warranty:
        DIRECT COMPANY
        VEHICLE WARRANTY
    "Ford Motor Company warrants to the owner each part of this Ford vehicle to be free under normal use and service from defects in material and workmanship for a period of 24 months from the date of delivery to the original retail purchaser or until it has been

driven for 24,000 miles, whichever comes first. This warranty shall be fulfilled by the dealer (or if the owner of the vehicle is traveling or has become a resident of a different locality, by any authorized Ford dealer) replacing or repairing at his place of business, free of charge including related labor, any such defective parts.
    "This warranty shall not apply to (i) tires or tubes (appropriate adjustment for them being provided by their manufacturers), or (ii) to normal maintenance services (such as engine tune-up, fuel system cleaning and wheel, brake and clutch adjustments), or (iii) to normal replacement of service items (such as filters, spark plugs, ignition points, wiper blades and brake or clutch linings), or (iv) to deterioration of soft trim and appearance items due to normal use or exposure.
    "This warranty is expressly IN LIEU OF any other express or implied warranty, including any implied WARRANTY of MERCHANTABILITY or FITNESS, and of any other obligation on the part of the Company or the selling Dealer."
    Ford also furnished Matthews a full warranty statement which was essentially similar to the warranty in the purchase order.

4. Va.Code Ann. § 8.2–316 provides in part:
    "(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this title on parol or extrinsic evidence (§ 8.2–202) negation or limitation is inoperative to the extent that such construction is unreasonable.
    ". . . to exclude or modify the implied warranty of merchantability or

because it is clear that Ford is liable under its express warranty.

■ The evidence was sufficient for the jury to find that Ford breached its express warranty by selling a car which inadvertently went into reverse gear when a wheel struck the type of slight obstruction that a manufacturer could reasonably expect a buyer to encounter in ordinary travel. *Cf.* Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 83 (4th Cir. 1952). Therefore, the only remaining question is the effectiveness of Ford's attempt to limit damages by restricting Matthew's remedy to replacement of defective parts. This limitation fails for two reasons. First, Virginia's version of the Uniform Commercial Code strips Ford of the defense of lack of privity.[5]

Secondly, § 2–719(3) of the Code denounces as prima facie unconscionable the limitation of damages for personal injuries that are caused by consumer goods. Since Ford did not rebut this presumption, Matthews was entitled to recover damages for his injuries.[6]

■ Kimnach Ford's contractual liability rests on a different theory. The district court ruled that Kimnach impliedly warranted the fitness of the car, as provided in § 2–315 of the Code.[7] Evidence of the car's defects was sufficient to establish breach of this warranty and, therefore, the jury's verdict on this issue is unassailable. Kimnach, however, urges us to hold that although it gave no express warranties, it effectively dis-

any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . ."
Va.Code Ann. § 8.2–302(1) provides:
"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."
*See* Ford Motor Co. v. Reid, 250 Ark. 176, 465 S.E.2d 80 (1971) ; Zabriskie Chevrolet, Inc. v. Smith, 99 N.J.Super. 441, 240 A.2d 195 (1968) ; Berg v. Stromme, 79 Wash.2d 184, 484 P.2d 380 (1971). *See generally* L. Frumer & M. Friedman, Products Liability § 19.07 [6] (1972) ; C. Bunn, H. Snead, and R. Speidel, An Introduction to the Uniform Commercial Code § 2.28(B) (1964) ; Ellinghaus, In Defense of Unconscionability, 78 Yale L.J. 757 (1969) ; Moyle, Exclusion and Modification of Warranty under the U.C.C., 46 Denver L.J. 579 (1969) ; Note, Unconscionable Contracts under the Uniform Commercial Code, 109 U.Pa.L.Rev. 401 (1961).

5. Va.Code Ann. § 8.2–318 provides in part: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or

implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods . . . ."

6. Va.Code Ann. § 8.2–719(3) provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."
Va.Code Ann. § 8.2–715(2) defines consequential damages:
"(2) Consequential damages resulting from the seller's breach include
"(b) injury to person or property proximately resulting from any breach of warranty."

7. Va.Code Ann. § 8.2–315 provides: "Implied warranty: Fitness for particular purpose.—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section . . . an implied warranty that the goods shall be fit for such purpose."
The district court did not instruct the jury on the implied warranty of merchantability created by Va.Code Ann. § 8.2–314.

claimed all implied warranties.[8] We find no merit in this contention.

■ Clause 10 of the terms and conditions of the purchase order [9] was not an effective disclaimer. The Code requires that a writing excluding the implied warranty of fitness be "conspicuous." [10] Clause 10, buried in small type among 18 other numbered paragraphs on the back of the purchase order, fails to satisfy the Code's definition of this essential adjective.[11] Accordingly, the implied warranty of fitness was not excluded by Clause 10.

■■ The district court, over Kimnach's objection, held that Kimnach could not rely on the disclaimer of implied warranties in Ford's express warranty because this warranty by its terms ran directly from Ford to the customer. In the absence of an effective disclaimer, the court ruled, the implied warranty of fitness provided in § 2–315 applied.[12] We find no error in this ruling. Generally, express warranties and disclaimers do not run with personal property. Therefore, the exclusions contained in a manufacturer's express warranty do not absolve an independent dealer [13] from liability imposed by an implied warranty. Jolly v. C. E. Blackwell & Co., 122 Wash. 620, 211 P. 748

(1922); *cf.* Fisher v. City Sales & Serv., 128 So.2d 790, 793 (La.App.1961) (civil law).

■ Kimnach, however, argues that the general rule of non-assignability of disclaimers does not apply because Ford's disclaimer expressly embraces the dealer. Even if the district court had accepted this argument, Kimnach would be liable. If the disclaimer in Ford's warranty is deemed to exclude Kimnach's implied warranty, the undertaking assumed by Kimnach to fulfill Ford's warranty must also be considered. Its liability, therefore, is coextensive with Ford's, and the attempt to limit its responsibility for damages to the repair or replacement of defective parts is also prima facie unconscionable under § 2–719(3) of the Code.[14] Since Kimnach, too, failed to rebut the presumption, it, no less than Ford, would be liable to Matthews for his personal injuries under this alternative theory.

Although the Virginia Supreme Court held in Marshall v. Murray Oldsmobile Co., 207 Va. 972, 154 S.E.2d 140 (1967), that a disclaimer of implied warranties was not contrary to public policy, Ford's and Kimnach's reliance on the case is unfounded. *Murray* was a suit for rescission of a contract, not for personal

---

8. Kimnach's argument may be self-defeating. It has been suggested that total disclaimer of warranties would be unconscionable with respect to personal injuries. *See* L. Frummer & M. Friedman, Products Liability § 19.07 [6] (1972).

9. "10. It is expressly agreed that there are no warranties, express or implied, made either by the Dealer or the manufacturer on the motor vehicle, chassis, parts or accessories furnished hereunder, unless a separate written warranty is given by the Dealer to the Buyer at the time of sale. This applies to new motor vehicles as well as used motor vehicles. The Buyer must have a written guarantee in his possession to secure an adjustment."

This clause was printed in type much smaller than the warranty set forth in note 3, *supra*.

10. Va.Code Ann. § 8.2–316(2) provides in part:
"[T]o exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . ."

11. Va.Code Ann. § 8.1–201(10) provides:
"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals . . . is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color . . . . Whether a term or clause is 'conspicuous' or not is for decision by the court." *See* Moyle, *supra* note 4, at 607.

12. *See* note 7, *supra*.

13. At the instance of Ford and Kimnach, the district court ruled that Kimnach was not the agent of Ford.

14. *See* note 6, *supra*.

injuries. Moreover, since the transaction occurred before Virginia adopted the Uniform Commercial Code, the statutes which govern the case before us played no role in that decision.

The judgment is

Affirmed.