**Cathy Ann BUTLER, Administratrix of the Estate of Charles Raymond Butler, Jr., deceased, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION CORP., Defendant.**

**Civ. A. No. 89–0064–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

Oct. 18, 1991.

**1204**

Mary Ann Barnes, Martin J. McGetrick, Chandler, Franklin & O'Bryan, Harrisonburg, VA, Peter N. Munsing, Mayerson, Gerasimowicz & Munsing, Spring City, PA, for plaintiff.

Christopher C. Spencer, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court on Navistar International Transportation Corporation's ("Navistar") motion for summary judgment. For the reasons set forth below, the court grants Navistar's motion with respect to all of plaintiff's claims.[1]

### BACKGROUND

The following background information is gleaned from all the pleadings, motions, depositions and affidavits filed in this case. The evidence is taken in the light most favorable to plaintiff.

On August 13, 1987 Charles Butler ("Butler") died when he was crushed by a tractor he was operating as an employee of Moore's Farm Service ("Moore's"). The tractor in question is a 1984 International Harvester[2] wheel type agricultural tractor. At the time the tractor was sold to Moore's, roll over protective systems ("ROPS") were standard equipment subject to a delete order. The tractor sold to Moore's did not have a ROPS.

On the day he died, Butler was replacing fence posts on a farm in Sperryville, Virginia, with two other Moore's employees, Jerry and James Eshelman. The work on this particular farm was extensive, and all three men had been working at this same job site for several days. In their depositions, both Eshelmans indicate that the farm in Sperryville was covered by many hills.

On the morning of August 13th Butler and the Eshelmans arrived at the farm to begin their fencing operations. James Eshelman, who acted as foreman, instructed Butler and Jerry to fetch a wagon the trio had been using to move fence posts. This wagon was stationed atop a hill where the

---

1. Plaintiff's pleading, perhaps described as creative, lists, inter alia, 21 ways in which she can recover under a negligence theory. For the sake of brevity, the court will not attempt to list each of these claims individually.

2. In 1985 Navistar assumed the liabilities of International Harvester Company (IHC). Although plaintiff originally brought suit against IHC, Navistar is the proper defendant in this case.

men had been working the previous day. Butler drove the tractor up to the wagon while Jerry rode on either the tractor's fender or bumper. After the wagon was attached, Butler proceeded to drive the tractor back down the hill, using a route which was steeper than the one he used to reach the wagon in the first instance.

Unfortunately for Butler, the route he chose to proceed down the hill proved to be too steep. The tractor picked up speed and Butler was unable to keep it under control. The tractor made it three quarters of the way down the hill before the front wheels hit a small cow path. The tractor then flipped over, killing Butler.[3]

The administratrix of Butler's estate brought suit against Navistar seeking compensatory and punitive damages under the following theories: (i) breach of express and implied warranty; (ii) negligence; and (iii) strict liability.[4] Navistar challenges this complaint with its motion for summary judgment. Specifically, Navistar asserts plaintiff has failed to adduce evidence establishing a case under any of these theories. Alternatively, Navistar states the affirmative defenses of assumption of risk and contributory negligence defeat plaintiff's claims. The court has no occasion to discuss these affirmative defenses as it finds plaintiff has failed to put forth sufficient evidence to establish a case under any of her theories of recovery.

## STANDARD OF REVIEW

■■■■ Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that a motion for summary judgment shall be granted if "there is no genuine issue as to any material fact[,] and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail on a motion for summary judgment, the moving party must initially show there is an absence of evidence in support of his oppo-

nent's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The non-moving party must then produce evidence, "not mere allegations or demands, [which] set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the non-moving party fails to produce such evidence, the "trial judge *shall* then grant summary judgment if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 250, 106 S.Ct. at 2511 (emphasis added). "There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. This language indicates "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Catrett*, 477 U.S. at 327, 106 S.Ct. at 2555 (citations omitted).

### I.

#### Sufficiency of Plaintiff's Claims

1. *Implied Warranty of Merchantability*

■■■■ The parties agree Virginia law controls in this diversity action. In Virginia, wrongful death claimants may recover for breach of implied warranty of merchantability by establishing, inter alia, that: (1) the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose; and (2) the unreasonably dangerous condition existed when the goods left the defendant's hands.[5] *Bly v. Otis Elevator*, 713 F.2d

---

3. Jerry Eshelman was riding in the wagon behind the tractor when Butler started down the hill. He managed to jump off the wagon before the tractor rolled over.

4. Plaintiff asserts her claim under the heading "product liability." However, the complaint indicates plaintiff attempts to proceed under a theory of strict liability.

5. Navistar sold the tractor is question to H.B. Duvall, a farm equipment dealer. Duvall's general manager ordered the tractor without a ROPS. *Hamburg Dep.* at 5. Duvall sold the tractor to Northern Virginia Farm Services ("VFS") in Rectortown, Virginia. Moore's purchased the tractor from VFS.

1040, 1043 (4th Cir.1983). "Unreasonably dangerous" products are those: (i) defective in assembly or manufacture; (ii) imprudently designed; or (iii) not accompanied by adequate warnings about their hazardous properties. *Id.*, citing *Matthews v. Ford Motor Co.*, 479 F.2d 399, 400 (4th Cir.1973); *Dreisonstok v. Volkswagon, A.G.*, 489 F.2d 1066, 1071 (4th Cir.1974), *Spruill v. Boyle–Midway*, 308 F.2d 79, 85–86 (4th Cir.1962).

### A. Design Defect

■ Plaintiff claims Navistar's tractor was unreasonably dangerous because of design defects and inadequate warnings. In support of the design defect claim, plaintiff alleges many people are killed in tractor roll or tip overs and that a ROPS would prevent these deaths. Navistar does not dispute that a ROPS could have been attached to the tractor. In fact, it was standard equipment subject to a delete order from the buyer, in this case H.B. Duvall, a farm equipment dealer. Nor does Navistar dispute the allegations regarding deaths in tractor roll overs, and the safety benefits of a ROPS. Navistar has submitted to the court an insert to its operator's manual which states:

> Overturns are involved in about half of the fatal tractor accidents and are responsible for many disabling injuries and much property damage. However, as the use of protective frames and crush-resistent cabs with safety (seat) belts increases, the number of serious and fatal injuries from such accidents should decrease.

Language in the Fourth Circuit's opinion in *Bly*, supra, appears to favor plaintiff's position. Here, plaintiff's decedent was killed while operating a lift truck for his employer. Operating the truck required the driver to stand on a small platform and drive backwards, as his view in the front would be obscured by the material he was moving. The truck itself contained a guard which extended to the driver's shin. The decedent was killed when the truck he was operating collided with a canister loaded on the front of another truck. This canister was raised off the ground, and it passed over the lift truck's shin guard and crushed the decedent against the control instruments of his lift.

The plaintiff in *Bly* brought suit and recovered damages under a breach of implied warranty of merchantability theory. Plaintiff's primary claim under this theory was that "the lift truck as designed was defective and 'unreasonably dangerous' because its shin guards provided inadequate protection to the operator in rear-end collisions." *Id.* at 1043. Plaintiff supported her claim with expert and documentary evidence indicating that when the truck was manufactured and sold, "industry and government circles had recognized the need for waist-high guards on such lift trucks as a reasonable means of ensuring greater safety." *Id.* In rejecting the defendant's appeal from a jury verdict, the Fourth Circuit stated:

> In light of this evidence suggesting that waist-high guards reflected prevailing industry views on the appropriate level of operator protection at the time this lift truck was manufactured and sold, coupled with expert testimony opining that the truck was, in this sense, defective in design, a jury could certainly conclude that a lesser standard of protection was "unreasonable" and a breach of the warranty of merchantability that proximately caused Bly's death.

*Id.*

Unfortunately for plaintiff, her case does not fit within the parameters of *Bly*. No recognized standard or government regulation required a manufacturer in 1984 to compel all of its purchasers to buy tractors with ROPS. *Dalloz Dep.* at 49–52. Plaintiff's own expert[6] witness is equivocal at best in expressing why a tractor without a ROPS is defectively designed. He states, "that tractor should have had a ROPS on it when it was sold. I would prefer to see ROPS as standard equipment, but the ultimate requirement is ... in the [tractor's]

---

6. The court uses the term expert in the generic sense; i.e. Mr. Pacheco appears to have the technical background necessary to render an expert opinion.

application with the required safety equipment." *Pacheco Dep.* at 57.[7] Lastly, it does not appear the a waist-high guard was standard equipment on the lift in *Bly.* Although this distinction is more meaningful in the context of a claim for negligent design, it illustrates the real differences between this case and *Bly.* In sum, there is not sufficient evidence which would allow a jury to return a verdict in plaintiff's favor for a design defect under the theory of breach of implied warranty of merchantability. Accordingly, Navistar's motion for summary judgment is granted as to this issue.

**B. Failure to Warn**

█ Plaintiff has alleged two causes of action properly characterized as failure to warn. As noted in *Bly*, supra, a manufacturer that fails to warn of the dangers of its products can be held liable, in appropriate circumstances, either on a theory of negligence or on a theory of implied warranty of merchantability. Although the duty imposed under both theories differs slightly, the court will address each theory concurrently. This is because under both theories, plaintiff is required to prove that any breach of duty by Navistar was the proximate cause of Butler's death. For the reasons stated more fully below, the court finds, as a matter of law, any breach of duty by Navistar based on a failure to warn was not the proximate cause of Butler's death.

Navistar contends summary judgment is appropriate on the failure to warn causes of action [8] as there is no duty to warn: (i) of hazards which are open and obvious; (ii) someone of something they already know; (iii) an employee of dangers known by his employer and fellow workers which should

be known, in the exercise of reasonable care, to the plaintiff; and (iv) of hazards which are common knowledge. Navistar also argues that even if it was under a duty to warn, the plaintiff has wholly failed to produce any evidence indicating it breached this duty.

█ The court rejects Navistar's argument it was under no *duty* to warn Butler because he had been warned by others. These arguments may be persuasive with respect to a manufacturer's duty in a negligence case. *Cf. Willis v. Raymark,* 905 F.2d 793 (4th Cir.1990) (Virginia law recognizes sophisticated user defense which may relieve manufacturer of duty to warn employees). However, claims arising under an implied warranty of merchantability theory require that the unreasonably dangerous condition exist at the time the goods leave the defendant's hands. *See Bly,* supra. The import of this language is that the defendant's conduct is evaluated at the moment it sells its product. *Id.* 1046 (duty to warn exists only at the time the product leaves the manufacturer's control).

█ For the court to accept Navistar's argument that it owed no duty to Butler, it would have to find as a matter of law tractors require no warnings. This the court cannot do. It is entirely conceivable a jury would find some sort of warnings necessary to prevent a tractor from being unreasonably dangerous. Navistar makes much of the fact plaintiff cannot articulate the warnings she would place on the tractor. Plaintiff does not have the burden of deciding which warnings would be appropriate on a tractor. She only needs to produce evidence that a warning is necessary. She has met her burden, for purposes of a summary judgment motion, by

---

**7.** Later in his deposition, Pacheco admits that he is aware that "there are applications for tractors which render ROPS impractical." *Pacheco Dep.* at 64. Here, Navistar sold the tractor to H.B. Duvall, a farm equipment dealer. Duvall's general manager, Charles Hamburg, ordered the tractor without a ROPS. *Hamburg Dep.* at 5. He did this because: (i) Duvall's sold this type of tractor to dairy farms; and (ii) a ROPS made the tractor too tall to fit into a dairy barn. *Id.* Duvall sold the tractor to Northern Virginia Farm Services ("VFS") in Rectortown,

Virginia. Moore's purchased the tractor from VFS. Plaintiff has failed to produce any evidence indicating that either H.B. Duvall or VFS is Navistar's agent.

**8.** Navistar addresses plaintiff's failure to warn claim only under a negligence theory. For the reasons stated in this opinion, the court concludes that the theories can be analyzed concurrently.

submitting published articles noting the danger of driver injury in a tractor tip over. Furthermore, Navistar's own operating manual indicates tip overs occur and are indeed dangerous.

Navistar claims it has discharged any duty owed to Butler by providing warnings on its tractors and in its operator's manual. In support of this contention Navistar submits a photo of an actual warning label identical to the label attached to the tractor in question. This warning states: "TRACTORS CAN BE ROLLED OVER. Slow down on turns, rough ground or hills." This warning is located on the tractor's left fender. The court cannot find this warning adequate as a matter of law.[9] A jury may reasonably find that the warning is too vague or is located in a inconspicuous place.

However, even if a jury were to find Navistar owed and breached a duty to Butler, plaintiff cannot recover unless she establishes this breach as the proximate cause of Butler's death. *See White Consolidated Ind. v. Swiney*, 237 Va. 23, 28, 376 S.E.2d 283 (1989); *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 430, 219 S.E.2d 685 (1975) (under negligence or warranty claim, plaintiff must prove essential elements of his case). Plaintiff acknowledges this herself. *See* Plaintiff's Response to Defendant's Sixth Motion for Sanctions at 1 ("The question is whether ... the lack of these items (ROPS and warnings) was a proximate cause of the Plaintiff's demise"). The only evidence touching on this issue indicates Butler had actual knowledge: (i) the tractor he operated lacked a ROPS; and (ii) tractors could tip over and seriously injure the driver if taken down a steep incline.

Butler must have had have actual knowledge the tractor he was driving lacked a ROPS. This is shown by deposition testimony of James and Jerry Eshelman indicating Butler had driven the tractor on previous occasions. The lack of a ROPS is something which is readily revealed by merely looking at the tractor.

It is likewise uncontradicted that Butler had actual knowledge of the dangers of driving down too steep a hill. Ramie Moore, Butler's employer, testified that:

> I personally told Chuckie (Butler) about the dangers of driving a tractor straight down a hill as steep as the one he was on when he died. I told him that if he went straight down a hill that steep, the tractor would go out of control, and probably roll or tip over and kill him or hurt him bad.

*Moore Aff.* 4.

Plaintiff also argues Navistar should have provided Butler with instructions about what to do in case of a roll over. Plaintiff's expert agreed that if a tractor lacks a ROPS, the driver should not be told to grip the wheel and stay within the vehicle. *Pacheco Dep.* at 64. Apparently, plaintiff must be arguing Navistar should have told Butler to jump off the tractor in the event of a roll over. However, there is no evidence in this connection indicating whether Butler attempted to stay on or jump off the tractor. Plaintiff's expert asserts that Jerry Eshelman's *description* of the accident indicates that Butler did not attempt to jump from the tractor. *Pacheco Dep.* at 50. This assertion is pure speculation.[10] Jerry Eshelman states clearly in his deposition, "I do not know if he [Butler] was thrown off or he jumped off. *Jerry Eshelman Dep.* at 28–29. Even if Navistar should have told Butler to jump off the tractor, there is no evidence for the jury to consider with respect to the issue of proximate cause. *See Lawson v. Doe*, 239 Va. 477, 391 S.E.2d 333 (1990).

Plaintiff has failed to put forth any evidence refuting these conclusions. Therefore the court has no choice but to find, as a matter of law, that any breach of the duty to warn by Navistar was not the

---

**9.** The owner's manual which came with the tractor contained explicit warnings about the dangers of driving on steep slopes. However, it is unclear whether Butler ever saw this manual.

**10.** Mr. Pacheco was asked "And again, that's a description that you are relating that Mr. Eshelman gave rather than some analysis you performed?" Answer: "Right". *Pacheco Dep.* at 50.

proximate cause of Butler's death. This holding applies equally to plaintiff's failure to warn claim based on negligence.

### 2. Negligence

 Plaintiff also sets forth a cause of action for negligent design. The elements necessary to establish a prima facie case under this theory mirror those required in a defect case brought under a breach of implied warranty of merchantability. The only notable difference is that under a negligence theory the manufacturer's conduct must be unreasonable. *See Bly*, supra.

Navistar asserts plaintiff has failed to produce any evidence creating a jury issue under a negligent design theory. Navistar originally sold the tractor in question to Charlie Hamburg, a wholesale distributor. Hamburg ordered the tractor without a ROPS so that it could be used around dairy barns with low doors. *Hamburg Dep.* at 5. Hamburg sold the tractor to Virginia Farm Services who in turn sold it to Moore's Farm Service.

 When a customer exercises an option to purchase a product without a safety feature, it is axiomatic that the manufacturer[11] should not be held liable for damages which that safety feature may have prevented.[12] This is particularly true when the customer chooses to delete the safety feature so the product can be put to some use that the feature would have prevented. Plaintiff's own expert admitted as much when he stated in his deposition that, "I would prefer to see ROPS as standard equipment, but the ultimate requirement is whether ... [a ROPS is appropriate] ... in the [tractor's] application ..." *Pacheco Dep.* at 57. A tractor used in an orchard or barn (the purposes for which Hamburg bought the tractor) could not readily be used with a ROPS. See *Pacheco Dep.* at 64.

 Plaintiff has failed to point to any Virginia law requiring a manufacturer to force consumers to purchase the utmost in safety features. If this were the law, airbags and anti-lock brakes would not be optional equipment; they would be mandatory items. Plaintiff cannot escape this conclusion by claiming government regulations enacted *after* 1984 require all tractors to be equipped with ROPS. The Fourth Circuit has resolved this issue. A product must be "measured against a standard existing at the time of sale or against reasonable customer expectations held at the time of sale." *Sexton v. Bell Helmets, Inc.*, 926 F.2d 331, 377 (4th Cir.1991). Further, "[h]indsight opinions by experts suggesting that more should have been done ... are insufficient to discredit the conclusion that the manufacturer met the standard of care. *Doe v. Miles Laboratories*, 927 F.2d 187, 193 (4th Cir.1991).

 Plaintiff attempts to save her ailing negligence claim by insisting that Navistar had a duty to "improve, by retrofit, the roll over protection, warnings, danger signs and safety equipment adopted after the manufacture of this tractor ..." Plaintiff's complaint at 41(M). Plaintiff cites no authority for this position.[13] Navistar, in contrast, cites *Wallace v. Dorsey Trailers Southwest, Inc.*, 849 F.2d 341 (8th Cir.1988) and *Habecker v. Copperloy Corp.*, 893 F.2d 49 (3rd Cir.1990). In *Wallace*, plaintiff was electrocuted while using an aerial lift bucket. Wallace claimed the manufacturer had a duty to retrofit the bucket with safety features. The district court held as a matter of law there is no such duty and granted summary judgment. The Eighth Circuit affirmed, holding that "failure to retrofit" was not an issue that could have been properly submitted to the jury.

In *Habecker*, the plaintiff claimed a forklift should have been retrofited with seat

---

11. Plaintiff has failed to produce any evidence indicating H.B. Duvall or Virginia Farm Services is an agent of Navistar.

12. This is assuming that the safety feature is not required by federal, state or local law.

13. The only case the court finds that might possibly recognize such a duty is *General Motors v. Lupica*, 237 Va. 516, 379 S.E.2d 311 (1989). However, recognizing such a duty would require a rather strained reading of *Lupica*.

belts. The Third Circuit rejected this claim, holding there was no duty to improve by retrofit and that the district court properly refused to submit the issue to the jury.

■ Even if this court were to hold, which it does not, that Virginia law would recognize a duty to retrofit, the facts of this case indicate that Navistar did not breach that duty. As has been previously noted, plaintiff's own expert admitted that ROPS are not appropriate equipment on all tractors in all situations. Unfortunately, the tractor Butler drove to his death lacked a ROPS. Perhaps a ROPS would have prevented Butler's death. Even so, plaintiff has wholly failed to produce any evidence indicating Navistar should have located the tractor and installed a ROPS,[14] possibly over the objections of a consumer. Given the facts of this case, the only way a jury could conceivably hold Navistar liable would be if it considered Navistar an insurer of its products. This is not the law in Virginia. *See Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 962, 252 S.E.2d 358 (1979) (manufacturer is not required to supply an accident proof product) citing *Turner v. Manning, Maxwell & Moore, Inc.*, 216 Va. 245, 251, 217 S.E.2d 863 (1975). Accordingly, Navistar's motion for summary judgment is granted with respect to negligent: (i) design; (ii) failure to retrofit; (iii) assembly or manufacture;[15] (iv) leasing;[16] and (v) sale.[17]

### 3. *Express Warranty of Merchantability*

In paragraphs 31–36 of her complaint, plaintiff alleges that Navistar breached an express warranty of merchantability. Plaintiff has failed to produce any evidence bearing on this issue. Therefore Navistar's motion for summary judgment on the express warranty claims is granted.

### 4. *Strict Liability*

■ Plaintiff attempts to allege a cause of action under the heading of "Products liability." The complaint makes it clear this is really an attempt to bring a cause of action under strict liability as outlined by Section 402(A) of the Restatement (Second) of Torts. Even a cursory reading of Virginia law indicates that this is not a recognized theory in Virginia. *See e.g., Lust v. Clark Equipment Co.*, 792 F.2d 436, 439 (4th Cir.1986); *Bly*, 713 F.2d at 1045.

### CONCLUSION

There is no reason for the court to consider Navistar's affirmative defenses as plaintiff has failed to produce any evidence showing there is a genuine issue for trial. Accordingly, Navistar's motion for summary judgment is granted with respect to all of plaintiff's claims. An appropriate order shall this day issue.

---

**14.** The court has previously decided that a lack of warning was not the proximate cause of Butler's death. Therefore the duty to retrofit cannot proceed under a failure to warn theory.

**15.** The court can only assume that manufacture and assembly mean the same thing in plaintiff's complaint. A manufacturing defect is a subset of a design defect. It is relatively easy to prove as plaintiff need only compare the defective

good with a properly constructed product. Plaintiff has not produced a scintilla of evidence on this issue.

**16.** There is absolutely no evidence that the tractor was ever leased to anyone.

**17.** The court considers the claim for negligent sale as identical as a claim of negligent design.