**Janice SPRINKLE, Plaintiff–Appellant,**

v.

**UNITED DOMINION INDUSTRIES, INC., et al., Defendants–Appellees.**

**No. 99–4216.**

United States Court of Appeals, Sixth Circuit.

Jan. 10, 2001.

---

Before KRUPANSKY, BATCHELDER, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Janice Sprinkle's husband was crushed and killed by an asphalt-rolling machine that turned over while he was operating the roller. She filed a products-liability suit against the manufacturer, United Dominion Industries, alleging that the roller had a design defect because it was not equipped with a roll-over protection system. The case was submitted to a jury, which found in favor of United Dominion. Sprinkle now appeals the district court's judgment, claiming that the court erred in denying (1) her motion for judgment as a matter of law and (2) her request to instruct the jury to consider, as part of its risk-benefit analysis of the roller's design, United Dominion's own recommendation of the protection system as standard equipment. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

On August 3, 1995, Frank Sprinkle was crushed to death by an asphalt roller that he was operating as an employee of Northwood Stone and Asphalt. He had offered

one of his co-workers a ride on the back of the roller when it tipped over on the side of an embankment. United Dominion manufactured the machine, a Hyster Roller Model C350D. At the time of manufacture, a roll-over protective system (ROPS) came as standard equipment, subject to a delete order by the purchaser. Because Northwood Stone and Asphalt placed such a delete order, the roller that killed Sprinkle had no ROPS.

ROPS is a safety device, consisting of a canopy-like roof structure and a seatbelt. In the event of a rollover, ROPS is designed to support the weight of the roller and keep the operator within the protective canopy. ROPS, however, is not effective unless it is used in conjunction with the seatbelt. If either is used without the other, ROPS might actually increase the risk of injury to the operator. Should a roller equipped with ROPS tip over when the operator is not wearing a seatbelt, the ROPS could impede the operator's ability to jump free of the roller. If, however, a roller without ROPS tips over and the operator *is* wearing a seatbelt, the operator could not jump free and would almost surely be crushed beneath the roller. The evidence adduced at trial also indicated that the presence of ROPS slightly *increases* the possibility that a roller will tip over on a slope, because its center of gravity is higher above the ground.

Although United Dominion offered ROPS as standard equipment on its asphalt rollers and encouraged its use, purchasers could order the machines without ROPS. The rollers were sometimes purchased for applications indoors or on narrow streets, where ROPS would not have been feasible or would have significantly reduced the roller's utility. United Dominion also provided this option because it could not compel operators to wear their seatbelts, and purchasers were better able to assess the habits of their own workforce. At trial, both parties' experts agreed that only 25 percent of ROPS-equipped operators in fact used their seatbelts. By the same token, neither party disputed the fact that Sprinkle most likely would have survived the accident had the roller been equipped with ROPS *and* had he been wearing his seatbelt.

### B. Procedural background

In June of 1997, Sprinkle's widow filed this wrongful death action, seeking compensatory and punitive damages in the Common Pleas Court of Union County, Ohio. Named as defendants were United Dominion and the roller's distributor. The McLean Company. The complaint alleged that (1) the roller was defective in its design because it lacked ROPS and (2) the defendants had failed to provide adequate warnings concerning the hazards associated with a roll-over.

On the basis of diversity of citizenship, the defendants removed the case to the United States District Court for the Southern District of Ohio. Both defendants subsequently moved for summary judgment. The district court granted summary judgment in favor of The McLean Company, but denied the motion filed by United Dominion. Thereafter, the case proceeded to trial. At the close of all the evidence. Sprinkle moved for judgment as a matter of law on the issue of whether the roller's design was unreasonably dangerous. The district court denied the motion, determining that there were enough facts in evidence for the jury to find that no defect existed. Over Sprinkle's objection, the district court also refused to instruct the jury that United Dominion's use of ROPS as standard equipment made ROPS an industry wide "standard" that required it to be attached to all rollers.

In response to the court's interrogatories, the jury specifically found that the roller's design was not in fact defective. The jury therefore returned its verdict in favor of United Dominion. Sprinkle now appeals, claiming that the district court erred in failing to grant her motion for judgment as a matter of law on the issue of design defect, and in denying her proposed jury instruction concerning an industry standard that required ROPS to be incorporated into the jury's risk-benefit analysis.

## II. ANALYSIS

A. The district court did not err when it denied Sprinkle's motion for judgment as a matter of law

■ Motions for judgment as a matter of law in diversity cases are reviewed by the same standard as employed for a directed verdict in the state whose substantive law governs the action. *See Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 645 (6th Cir.1991). Under Ohio law, a court must consider the evidence in the light most favorable to the party against whom the motion is made, and may grant the motion only if, taking the evidence in this light, there is but one reasonable conclusion as to the proper verdict. *See id.*

■ Sprinkle contends that the risks associated with asphalt rollers not equipped with ROPS so far outweigh any perceived benefit that a jury could only conclude that they are defective. We disagree. Pursuant to Ohio products-liability law, "a product is defective in design ... if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design ... exceeded [its] benefits." Ohio Rev. Code § 2307.75(A). Risks include (1) the nature, magnitude, and likelihood of harm resulting from foreseeable uses of or modifications made to the product, (2) the probability that a user of the product may be unaware of the potential for harm, due to the lack of a warning on the product, or the typical user's lack of knowledge about the particular danger posed by the product, and (3) the extent to which the product failed to meet industry standards in effect when it left the control of its manufacturer. *See* Ohio Rev.Code § 2307.75(B). The benefits of a product design are identified by weighing any performance or safety advantages gained by the design used against the cost, technical feasibility, and safety disadvantages posed by any alternative design available at the time the product left the control of its manufacturer. *See* Ohio Rev.Code § 2307.75(C).

Because United Dominion conceded that asphalt rollers equipped with ROPS are inherently safer than ones without ROPS, Sprinkle asserts that this "admission" entitled her to a judgment as a matter of law. Ohio law, however, requires that a factfinder consider the product design's *risks* as well as its benefits. At trial, United Dominion presented substantial evidence that, when deciding upon the design of a roller, it needed to consider the propensity of the operators not to use seatbelts. Due to the relatively small number of commercial operators who wore their seatbelts on ROPS-equipped rollers, the increased hazards associated with such nonuse, and United Dominion's inability to compel seatbelt usage, the jury could reasonably find that its design was not defective. An expert for United Dominion further testified that including ROPS on rollers slightly increased the chances of a roll-over. This testimony was still another factor that the jury could properly consider in its risk-benefit analysis of whether the roller in question was unreasonably dangerous.

Sprinkle contends that United Dominion's evidence concerning the risks associ-

ated with ROPS-equipped rollers was specious. She bases this claim on United Dominion's failure to present statistics showing the ratio of people killed by ROPS-equipped rollers versus those without ROPS. This argument, however, misconstrues who has the burden of proof when a motion for judgment as a matter of law is being considered by the court. Because Sprinkle was the moving party, *she* had to prove that all reasonable minds could only conclude that the risks of the challenged design outweighed its benefits. Simply establishing that grave risks were associated with the design in question failed to satisfy this burden, and United Dominion presented ample evidence to support a finding by the jury that the roller's design was not unreasonably dangerous. We conclude that the district court did not err by denying Sprinkle's motion for judgment as a matter of law.

Our conclusion is supported by similar results in other jurisdictions. In *Campbell v. Studer, Inc.*, 970 P.2d 389 (Wyo.1998), the Wyoming Supreme Court affirmed the trial court's grant of summary judgment in favor of the roller's manufacturer. The court held that the plaintiff had failed to present admissible evidence showing that the roller's lack of ROPS constituted a design defect. *See id.* at 394. Summary judgment was appropriate because Campbell was unable to dispute the defendant's expert testimony that no regulation or standard required ROPS to be installed, and because safety and operational concerns, such as reduced access, egress, maneuverability, and clearance, were inherent in the utilization of ROPS in the roller's design. *See id.* at 391. An analogous conclusion was reached in *Butler v. Navistar Int'l Transp. Corp.*, 809 F.Supp. 1202 (W.D.Va.1991), where the district court granted a tractor manufacturer's motion for summary judgment. One of the bases for the court's holding was the lack of any

recognized standard or government regulation that would have required manufacturers to attach ROPS to the tractors in question. *See id.* at 1206. Unlike the plaintiffs in *Campbell* and *Butler,* Sprinkle was afforded the opportunity to go to trial and have her case fully heard by a jury. We therefore have even less reason to disturb the district court's judgment in favor of United Dominion.

B. The district court properly denied Sprinkle's request for the jury to consider a "private product standard" requiring ROPS

■ In a related argument, Sprinkle claims that the district court committed reversible error by refusing to instruct the jury to consider in its risk-benefit analysis a "private product standard" to equip all asphalt rollers with ROPS. Jury instructions are reviewed "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach a decision." *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72 (6th Cir.1990). "A district court's refusal to give a jury instruction constitutes reversible error if: (1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case." *Webster v. Edward D. Jones & Co.,* 197 F.3d 815, 820 (6th Cir.1999) (internal citation omitted). We will reverse "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Beard,* 900 F.2d at 72–73.

■ Pursuant to Ohio law, a product's risks shall be "determined by considering ... the extent to which that design ... conformed to any applicable public or pri-

vate product standard that was in effect when the product left the control of its manufacturer." Ohio Rev.Code § 2307.75(B). Sprinkle contends that because United Dominion offered ROPS as a standard feature on all asphalt rollers, the jury should have been instructed to consider the extent to which the roller failed to conform to a private product standard. No evidence was presented, however, to suggest that this was a valid interpretation of the Ohio law. On appeal, Sprinkle remains unable to cite any authority that would support such a strained reading of the word "standard." Instead, Sprinkle alleges that the relevant language is "broad enough" to allow for the words to be given "their plain, ordinary meaning." But the fact that a particular manufacturer incorporates an item as *a standard feature* in its products is a far cry from making the item *an industry standard* in the manufacture of similar products.

During the jury-charge conference, the district court disagreed with Sprinkle's interpretation of the private product standard. It made the statement that "[i]n this case everybody agrees there has been no evidence that there were any standards promulgated by either a governmental body or any kind of consortium of manufacturers or safety engineers that applies to this particular aspect of this product." Rather than dispute the court's conclusion, Sprinkle's counsel asked if it was "all right if I keep my seat." This indicates Sprinkle's acknowledgment that no industry standard regarding ROPS was in existence.

For an issue to be submitted to the jury, there must be "sufficient evidence to support the giving of a[n] ... instruction." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828, 832 (1991) (quotation omitted). Because Sprinkle failed to show at trial that any private product

standard existed within the industry, the district court acted well within its discretion in denying Sprinkle's request. The jury instructions were accurate and, taken as a whole, more than adequately informed the jury of Ohio's products-liability law.

## III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.