Margaret JONES, Plaintiff,

v.

FORD MOTOR COMPANY, Defendant.

No. 1:03CV319(GBL).

United States District Court,
E.D. Virginia,
Alexandria Division.

May 25, 2004.

**442**

Robert T. Hall, Holly Parkhurst Essing, Hall, Sickels, Rostant, Frei & Kattenburg, Reston, VA, Bernard S. Cohen, Alexandria, VA, Thomas J. Murray, Mary S. O'Neill, Sanduskky, OH, for Plaintiff.

Joseph K. Reid, III, Perry Watson Miles, IV, McGuire Woods, Richmond, VA, for Defendant.

### *MEMORANDUM ORDER*

LEE, District Judge.

THIS MATTER is before the Court on three of the parties motions in limine. The first, is Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits. The second, is Defendant's Motion in Limine to Exclude Evidence of the Updegrove Report. The third, is Plaintiff's Motion in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports.

This is a product liability case. Plaintiff Jones was injured, and contends that her injuries occurred when her automobile suddenly accelerated out of control due to a design defect in the Defendant's automobile's cruise control system. The issue before this court is threefold. First, whether the testimony of the four individuals at issue who claim to have experienced sudden acceleration in Ford vehicles in Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits is relevant and admissible on the issue of whether Defendant had notice of a defective condition in the automobile at issue in this case. Second, whether the document referred to in this litigation as the "Updegrove Report,"

a database of complaints the Defendant manufacturer received about Ford vehicles, is relevant and admissible on the issue of whether Defendant had notice of a defective condition in the automobile at issue in this case. Third, whether reports issued by the American, Japanese, and Canadian governments concerning the subject matter of sudden acceleration, which Defendant seeks to introduce into evidence, are untrustworthy as not to comply with Federal Rule of Evidence 803(8)(C), the hearsay exception to public records. Also, even if the reports are admissible under Fed.R.Evid. 808(8)(C), whether the reports are relevant and admissible on the issue of whether Defendant had notice of a defective condition in the automobile at issue in this case.

The Court holds that Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits is DENIED because, upon a *de novo* examination of this issue, the Court concludes that the proffered testimony of the four witnesses who allegedly experienced "sudden acceleration" is relevant and admissible and should not be excluded at trial.

The Court holds that the Defendant's Motion in Limine to Exclude the "Updegrove Report" From the Trial of this Matter is GRANTED. The Updegrove Report does not sufficiently establish evidence of similar accidents to show that Defendant had notice and actual knowledge of the alleged defective condition in the automobile.

The Court holds that Plaintiff's Motion in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports is GRANTED. The Japanese and Canadian reports, while admissible under the hearsay exception for government records and relevant evidence, is excluded under Rule 403 of the Federal Rules of Evidence. Any probative value of this evidence is substantially outweighed by the danger of misleading of the jury, and confusion of the issues. In addition, Plaintiff has shown sufficient proof of circumstances surrounding Defendant's submission of information to the National Highway Traffic Safety Administration ("NHTSA") and the NHTSA's Office of Defects Investigation ("ODI") to demonstrate that in this case, these reports lack of trustworthiness. In addition, the Court concludes that even if it found that the ODI report was trustworthy, the parties' arguments concerning the methodology that this agency used to produce its report would needlessly waste time at trial, and confuse the jury, making the ODI report also inadmissible under Rule 403 of the Federal Rules of Evidence.

## BACKGROUND

Plaintiff and her husband owned a 1991 Lincoln Town Car manufactured by Defendant Ford Motor Company. Plaintiff's husband drove the automobile at issue to a gasoline station in Spotsylvania County, Virginia on February 3, 1998. After the Plaintiff's husband pumped gasoline into the car, he went inside the station to pay the attendant. Plaintiff, who had been seated in the front passenger seat of the Lincoln Town Car, noticed a truck. Specifically, she observed that her automobile was blocking the truck. Therefore, she decided to move the automobile a few feet to allow the truck room to exit. Plaintiff alleges that after she turned on the ignition and put the car in reverse, the car suddenly and unexpectedly accelerated rapidly in reverse. The car then crossed over four lanes of traffic, and struck a concrete stanchion. *See Jones v. Ford Motor Co.*, 263 Va. 237, 243–46, 559 S.E.2d 592 (2002).

The 1991 Lincoln Town Car was manufactured with an automatic transmission and a cruise control system. In Plaintiff's

case, she has sued Defendant alleging that phantom transient electrical signals and perhaps radio waves caused the cruise control system to malfunction, also causing the automobile to accelerate suddenly and uncontrollably. This acceleration, according to Plaintiff, occurs without leaving any physical evidence as to how or why such alleged malfunction occurred. *See* Complaint, Ex. 1, ¶¶ 5–6.

Plaintiff originally filed this case on October 25, 1999 in the Circuit Court of Fairfax County, Virginia. A jury returned a verdict against Plaintiff, which she appealed to the Supreme Court of Virginia. *See Jones*, 263 Va. at 237, 559 S.E.2d 592. The Supreme Court of Virginia remanded the case back to the Fairfax County Circuit Court for a new trial. Upon remand at the Fairfax County Circuit Court, the Plaintiff took a nonsuit, which ended the proceeding in that court, and then Plaintiff filed this case in the United States District Court for the Eastern District of Virginia. In the opinion rendered by the Supreme Court of Virginia, that court considered many of the same evidentiary issues before this Court, including both of Defendant's Motions in Limine addressed in this order.

Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits addresses deposition testimony from a Virginia State Trooper and three United States Secret Service employees who allegedly experienced "sudden acceleration" events in their Ford vehicles. Defendant anticipates that Plaintiff will offer this testimony into evidence since she unsuccessfully attempted to do so in the litigation proceedings in Fairfax County Circuit Court.

Defendant argues that this evidence does not relate to the issue of notice. Defendant further asserts that even if the Court were to find that the evidence were relevant as to the issue of notice, the evidence is unfairly prejudicial and would confuse the jury.

Plaintiff argues that in her original filing of this case in state court, the Supreme Court of Virginia, in *Jones v. Ford Motor Co.*, 263 Va. 237, 559 S.E.2d 592 (2002), held that the testimony of the law enforcement officers was substantially similar to Plaintiff's incident at issue in this case. Therefore, Plaintiff contends, the testimony of the law enforcement officers is highly relevant as to the issue of whether or not Defendant had notice of sudden acceleration in its vehicles.

Defendant's second motion is a Motion in Limine to Exclude Evidence of the Updegrove Report. Defendant Ford Motor Company compiled information about customer complaints of unintended acceleration incidents in various cars manufactured by Defendant. This study was supervised by an employee of Defendant, Alan Updegrove. This study included a categorization of the unintended acceleration events. Some events were classified as caused by operator error, other events were classified as caused by mechanical malfunction, and a majority of the events were unexplained and classified as "no cause identified." *See Jones*, 263 Va. at 250–51, 559 S.E.2d 592.

Defendant's main argument is that this study is irrelevant to Plaintiff's cause of action under controlling Virginia product liability law, which holds that relevant evidence of substantially similar incidents is admissible. Specifically, Defendant argues that the disparities in the vehicles and accident circumstances surveyed and involved in the customer complaints listed within the Updegrove Report, do not advance the fact-finder's inquiry of whether or not Defendant had notice of sudden acceleration in vehicles such as that Plaintiff drove, and is therefore irrelevant.

Plaintiff's argument is that this Ford report was prepared after a four-year investigation, and is therefore relevant and admissible to show notice of a defect and to impeach Defendant's witnesses. Furthermore, Plaintiff argues that this evidence is relevant on the issue of punitive damages. Plaintiff also argues that this study constituted "substantially more than any of the other automotive manufacturers ... in trying to identify the causes [of sudden acceleration.]" Pls. Mem. in Opp. to Def. Ford's Mot. in Limine to Exclude Evidence of the Updegrove Report at 4.

Plaintiff's motion in limine is to exclude various American, Canadian, and Japanese government reports. Defendant plans to introduce four reports into evidence. Two of the reports are from American government agencies. One is from NHTSA. The other is from ODI, an internal organization within NHTSA. The other two reports are from the governments of Canada and Japan, and according to Defendant, are from agencies in those countries equivalent to NHTSA in the United States.

Both the NHTSA and the ODI report, according to Defendant, reject the scientific theory that Plaintiff will most likely use in this case. Specifically, the NHTSA report rejects the scientific theory of Mr. Samuel Sero, whom Plaintiff has designated as an expert witness in this case. Mr. Sero opines that Ford's automobile is defective because negative electrical transient signals from an unidentified vehicle component can inject themselves into the cruise control system to pull open the vehicle's throttle, and keep it open for a while, causing sudden acceleration. According to Mr. Sero, following the accident, all evidence of the transient signal would vanish, leaving no physical indication of any vehicle malfunction whatsoever. *See* Fairfax County Circuit Ct. Trial Tr. at 1189–96. The Canadian and Japanese government reports also offer a similar analysis regarding the phenomenon of sudden acceleration.

Plaintiff argues that the two NHTSA investigations, the Japanese report, and the Canadian report all constitute inadmissible hearsay. Specifically, Plaintiff argues that the government records do not fit within the hearsay exception for public records as set forth in Federal Rule of Evidence 803(8), because, according to Plaintiff, the reports are untrustworthy. Plaintiff argues that ODI's report is untrustworthy because, in her opinion, ODI's methodologies are unreliable. Plaintiff further contends that ODI's methodologies have been criticized by another United States Government agency, the Department of Transportation.

Plaintiff alleges that Ford misrepresented sudden acceleration information to NHTSA, therefore making the report untrustworthy. Plaintiff argues that Ford failed to fully inform NHTSA of the internal investigation done by its Automotive Safety Office, which contained tabulations of sudden acceleration incidents. Plaintiff contends that Ford should have fully disclosed this report, which was in response to NHTSA's December 31, 1986 inquiry that Ford disclose "all studies, surveys, or investigations from all sources" pertaining to unexpected vehicle acceleration. Pls. Mem. in Opp. to Def. Ford's Mot. in Limine to Exclude Evidence of the Updegrove Report at Ex. 2. Plaintiff has provided to the Court an extensive tabulation of sudden acceleration incidents, contained within the internal report, which it alleges that Defendant did not disclose to NHTSA. *Id.* at Ex. 15. NHTSA used the information provided by Ford to produce the report at issue in this litigation.

In addition, Plaintiff contends that Defendant concealed and inaccurately reported to the NHTSA the numbers of sudden acceleration events Ford received through

customer complaints. Plaintiff argues that NHTSA then relied upon these alleged misrepresentations to produce its reports. According to Plaintiff, Defendant originally reported 122 incidents of sudden acceleration to NHTSA. *See* Pls. Mem. in Supp. of Mot. in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports at Ex. 13. That number was later amended to 236 reports. *Id.* at Ex. 2. However, Plaintiff presents an internal study done by the head of Ford's Automotive Safety Office, which shows that during the time period of Defendant's reporting of sudden acceleration incidents to NHTSA, that 467 incidents had been reported to Ford. *See Id.* at Ex. 14–15.

Plaintiff also argues that Defendant falsely told NHTSA that electronic cruise control malfunctions would leave physical evidence. However, Plaintiff asserts, Defendant failed to report Ford's classifications of "No Cause Identified" in its internal studies on cruise control malfunctions. According to Plaintiff, Ford issued a report on electronic malfunctions within its cruise control systems for which it could not identify the trouble causing the problem. *Id.* at Ex. 25. Although Ford classified these problems as "No Cause Identified," the report stated that "whether we classify the part as defective or [Trouble Not Identified], the customer perceived (and may still have) a real problem." *Id.* With this knowledge, Plaintiff argues, Ford then reported to NHTSA that electronic malfunctions of this type that would cause sudden acceleration would leave physical evidence after the fact.

Plaintiff's last argument is that the Japanese and Canadian Governments' reports fail to specifically address Ford automobiles, and are therefore untrustworthy. According to Plaintiff, the Japanese report's primary focus is on General Motors automobiles. In addition, the Canadian Government report does not focus on Ford automobiles, and focuses on cruise control systems in general that are not functionally similar to those used in Ford products.

Defendant contends that the ODI report is trustworthy. Defendant argues that any questions Plaintiff may have regarding the methodology that ODI employs goes towards the weight of the evidence, not the admissibility of it. Furthermore, Defendant argues that federal agencies such as NHTSA and ODI are "uniquely qualified" to speak with authority on issues within the realm of their statutory mandate. *Geier v. American Honda Co., Inc.,* 529 U.S. 861, 883, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000); *accord Medtronic, Inc. v. Lohr,* 518 U.S. 470, 496, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

Defendant further argues that Plaintiff's claims of its misrepresentations to NHTSA are unsubstantiated, and are insufficient to prove her burden that these reports are unreliable. Specifically, Defendant contends that the sudden acceleration numbers with Ford's Automotive Safety Office's internal study refer to a different vehicle component and is therefore consistent with Defendant's submissions to NHTSA. *See* Def. Ford Motor Co.'s Br. in Opp. to Pl's. Mot to Exclude NHTSA, ODI, Japanese, and Canadian Reports at 11. Defendant contends that the difference in numbers reported internally and to NHTSA relates to cruise control systems completely distinguishable in design from the cruise control system featured on Plaintiff's automobile. *Id.*

Finally, Defendant argues that both the Japanese and Canadian reports are reliable to qualify for the hearsay exception for government records. Defendant argues that all of Plaintiff arguments address the weight, and not the admissibility, of the evidence.

## DISCUSSION

### STANDARD OF REVIEW

*Relevant Evidence*

■ The decision whether to admit or exclude evidence is governed by Rule 403 of the Federal Rules of Evidence. A court has broad discretion in determining whether to exclude relevant evidence under Rule 403. *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir.1994).

■ Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. To be relevant, evidence need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, "but it must in some degree advance the inquiry." 1 J. Weinstein & M. Berger, *Weinstein's Federal Evidence* § 401.04; *see also Davis v. Lane*, 814 F.2d 397, 399 (7th Cir.1987).

■ The Court need not admit all relevant evidence. *See Schultz*, 24 F.3d at 631. Under Rule 403 of the Federal Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Fed.R.Evid. 403.

*Admissibility of Public Records*

Rule 808(8) of the Federal Rules of Evidence covers the admissibility of public records as an exception to the hearsay rule. In relevant part, the rule states that the following class of records are admissible in spite of their hearsay characteristics: "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted under law, unless the source of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C). Rule 803(8) is grounded on the assumption "that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Fed.R.Evid. 803(8) advisory committee's note, quoted with approval in *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir.1984).

■ The admissibility of a public record specified in the rule is assumed as a matter of course, unless there are sufficient negative factors to indicate a lack of trustworthiness, in which case it should not be admitted. *See Ellis*, 745 F.2d at 300. The party opposing admission has the burden to establish unreliability. *Id.* at 301. Rule 803(8) "is not a rule of exclusion, but rather is a rule of admissibility" as long as the public record meets the requirements of the rule. Fred Warren Bennett, *Federal Rule of Evidence 803(8): The Use of Public Records in Civil and Criminal Cases*, 21 Am. J. Trial Advoc. 229, 232 (1997). *See also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (taking "[a] broad approach to admissibility under Rule 803(8)(C)".)

### ANALYSIS

**a) Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits**

■ The Court holds that Plaintiff's proffered evidence of four witnesses who have allegedly experienced "sudden acceleration" events in a vehicle manufactured by Defendant with a cruise control system is admissible. This evidence is admissible for two reasons. First, the evidence is

relevant to prove that the Defendant had notice of a defect in the motor vehicle. Second, the evidence is admissible to impeach the proffered testimony of the Defendant's expert witnesses expected at trial.

In order for Plaintiff to prove her cause of action against the Defendant, Plaintiff may offer evidence of similar accidents. Plaintiff may offer this evidence when it is relevant to show that the Defendant had notice and actual knowledge of a defective condition, where the prior incidents occurred under substantially the same circumstances, and where the prior incidents had been caused by the same or similar defects and dangers as those in issue in this case. *Jones*, 263 Va. at 237, 559 S.E.2d 592 (citing *General Motors v. Lupica*, 237 Va. 516, 521, 379 S.E.2d 311 (Va. 1989)).

In this case, Plaintiff must show that the manufacturer:

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of facts which make it likely to be dangerous." *Id.* at 253, 559 S.E.2d 592.

Defendant seeks to exclude the testimony of three Secret Service agents and one Virginia State Trooper, all of whom claimed that a "sudden acceleration" event occurred in a vehicle with a cruise control system manufactured by Defendant. All of these drivers experienced sudden and unexplained wide throttle acceleration incidents. The Supreme Court of Virginia addressed this issue in *Jones*. *Id.* at 246–50, 255–57, 559 S.E.2d 592. There is no substantial question that the events identified in the Supreme Court of Virginia opinion are the same events presented to this Court in Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits. While this Court is not necessarily bound to admit or exclude evidence based upon Virginia common law, the Court concludes that the Federal Rules of Evidence do not call for a different result on this motion.

Defendant argues that its post-Supreme Court of Virginia decision discovery demonstrates that Plaintiff's theory of the case has changed and thus the proffered incidents are no longer substantially similar. The Court disagrees.

Plaintiff's proffer demonstrates that each of the drivers whose testimony was offered was operating an automobile manufactured by Defendant, and each experienced sudden acceleration events. The Supreme Court of Virginia held:

"We observe that the record before us contains evidence that the sudden acceleration events that [happened] occurred under substantially the same circumstances and had been caused by the same or similar defects and dangers as those in the plaintiff's case ... All of the witnesses experienced unintended sudden acceleration and none was able to stop his car with the normal application of the brake pedal." *Id.* at 255, 559 S.E.2d 592.

The Court notes that Defendant contends that Plaintiff's witnesses Robert A. Diehl and John W. Baker, both employees with the United States Secret Service, have recently testified in a manner inconsistent with prior depositions. These matters may be brought out on cross-examination. Furthermore, as the fact-finder, the jury will ultimately decide how much weight to give to this evidence.

Additionally, Defendant argues that Virginia State Trooper Ronald Campbell's testimony should be excluded because he previously testified that he had electrical

problems with his car prior to the accident. Therefore, Defendant contends, Plaintiff has not proved that Trooper Campbell's automobile problems were substantially similar to those problems at issue in this case. The Court rejects this argument. The Court finds that this evidence is relevant and probative to demonstrate that there may be a correlation between electrical problems with the Ford automobile and the cruise control system. In addition, this matter, and Trooper Campbell himself, are both subject to cross-examination.

Moreover, the Supreme Court of Virginia held that the proffered testimony at issue in this Motion in Limine is relevant and admissible as impeachment evidence to respond to Defendant's expert testimony. Defendant's expert witnesses contended that the Ford automobile is properly designed and that driver error causes sudden acceleration. The testimony of Plaintiff's proffered witnesses directly contradicts the Defendant's expert testimony. Plaintiff may impeach the Defendant's expert testimony with contrary witness testimony as outlined by the Supreme Court of Virginia. *Id.* at 258, 559 S.E.2d 592.

Defendant finally argues that Plaintiff's proffered evidence should be excluded because it is unfairly prejudicial and will necessarily involve offering evidence concerning the substance of the mechanical problems with the witnesses' vehicles. The Court is mindful that allowing this testimony will necessarily require Defendant to offer testimony in response explaining that the substance of the witnesses' experiences with Defendant's automobiles was unrelated to any mechanical defect, was driver error, or any other reasoning Defendant can ascertain. This burden is no different than the burden Defendant bears in responding to Plaintiff's claim. Defendant maintains that only driver error explains Plaintiff's incident, and that there is no

product design defect present. Given the limited number of incidents involved, the Court is of the opinion that this testimony is relevant, and that it bears on notice. Furthermore, this testimony deals directly with impeachment to Defendant's defense that there was no mechanical failure.

**b) Motion in Limine to Exclude Evidence of the Updegrove Report**

■ The Court upon de novo review of the admissibility of the Updegrove Report, adopts the opinion of the Supreme Court of Virginia and rules that this study is not admissible for the reasons stated by the Supreme Court of Virginia. The Updegrove Report may not be used as a predicate for expert opinions.

The Updegrove Report contains unsworn claims of complaints of vehicle malfunction. As the Supreme Court of Virginia held, "There is simply no evidence that the 2,900 claims mentioned in the Updegrove [Report] occurred under substantially the same circumstances as the plaintiff's incident and had been caused by the same or similar defects and dangers as those in the plaintiff's case." *Jones,* 263 Va. at 257, 559 S.E.2d 592. Furthermore, the Supreme Court of Virginia held that the Updegrove Report was inadmissible under its holding in *Ford Motor Co. v. Phelps,* 239 Va. 272, 276–77, 389 S.E.2d 454 (1990), which requires a threshold showing of substantial similarity as a prerequisite to admissibility of other accident evidence. *Id.*

Several federal cases follow in the holding of *Phelps,* which state that the Plaintiff bears the burden of demonstrating that all of the accidents in the report are substantially similar to the incident at issue. *See Jimenez v. DaimlerChrysler Corp.,* 269 F.3d 439, 456 (4th Cir.2001); *Mills v. Beech Aircraft Corp., Inc.,* 886 F.2d 758, 762 (5th Cir.1989).

The incidents chronicled in the Updegrove Report are not all substantially similar to Plaintiff's incident. The supposed sudden acceleration claims in the Updegrove Report vary in their factual context and involve all Ford vehicle makes and several model years. In addition, less than ten percent of the accidents reviewed in this report involve the same model as Plaintiff's vehicle. *See* Def. Ford Motor Co.'s Br. In Supp. of its Motion in Limine to Exclude the "Updegrove Report" From the Trial of this Matter at Ex. 4, Attachment L. In addition, for the same reasons, the Court finds that allowing this report has the potential to confuse the jury, and should be excluded under Fed.R.Evid. 403.

■ This evidence is also inadmissible under the Rule 401 of the Federal Rules of Evidence. The Updegrove Report does not sufficiently establish evidence of similar accidents to show that Defendant had notice and actual knowledge of the alleged defective condition in Plaintiff's type of automobile. The vast majority of the incidents detailed in the Updegrove Report were labeled "NCI," or "no cause identified." Def. Ford Motor Co.'s Br. in Supp. of its Motion in Limine to Exclude the "Updegrove Report" from the Trial of this Matter at Ex. 4, Attachment B. The report also concluded that these sudden acceleration events were most likely caused by pedal application error. *Id.* Because this study classifies most of the sudden acceleration events as "no cause identified," and concludes that it was in essence driver error that caused the events, this report does not advance Plaintiff's theory that Defendant had notice of the alleged defective condition in her automobile. For

these foregoing reasons, this report is excluded from evidence.

### c) Plaintiff's Motion in Limine to Exclude NHTSA, ODI, Japanese and Canadian Reports

The Court grants Plaintiff's Motion in Limine and rules that the NHTSA, ODI, Japanese and Canadian Reports are all inadmissible. Plaintiff argues that all of these reports are hearsay, and do not qualify for the hearsay exception for public records set forth in Federal Rule of Evidence 803(8)(C). The Court partly agrees. The Court holds that the NHTSA and ODI reports are hearsay not covered by Fed.R.Evid. 803(8)(C) for lack of trustworthiness. However, the Japanese and Canadian reports, by themselves, do fit within the 803(8)(C) hearsay exception for public records. However, the content and nature of these documents make them a source of confusion of the issues for the jury, and therefore this evidence is excluded under Rule 403 of the Federal Rules of Evidence.

■ Plaintiff has demonstrated sufficient evidence for the Court to conclude that the NHTSA and ODI reports that Defendant intends to offer as evidence lacks trustworthiness as required by Fed.R.Evid. 803(8)(C). Defendant has cited numerous cases where federal courts have admitted NHTSA and ODI reports.[1] However, all of the holdings in those cases differ from the case before this Court. In all of the cases Defendant cites, the parties seeking the exclusion of the evidence had failed to satisfactorily produce evidence which would lead the court to doubt the reliability of the report. *See, e.g., Livingston v. Isuzu Motors, Ltd.*, 910 F.Supp.

---

**1.** *See, e.g., Jarvis v. Ford Motor Co.*, 2000 WL 1300444 at *5 n. 13, 2000 U.S. Dist LEXIS 13217 at *18 n. 13 (S.D.N.Y. Sept. 13, 2000) (allowing introduction of 2000 ODI Report pursuant to Rule 803(8)); *Guild v. General*

*Motors Corp.*, 53 F.Supp.2d 363, 366 (W.D.N.Y.1999) (holding admissible NHTSA report regarding inertial seat belts in defective sear belt product liability case).

1473, 1497 (D.Mont.1995) (allowing into evidence, over defendant's objection, NHTSA reports regarding vehicle roll-over allegations, finding that the record contains no evidence that would lead this court to doubt the reliability of the reports.) Here, Plaintiff has sufficiently shown evidence which brings into doubt the reliability of the NHTSA report.

Specifically, Plaintiff has shown evidence of an internal study done by Defendant's Automotive Safety Office. Defendant did not fully disclose this·study to NHTSA. Defendant's internal study contained an extensive tabulation of sudden acceleration incidents. *See* Pls. Mem. in Supp. of Mot. in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports at Ex. 15. This study shows that the number of sudden acceleration events reported to Defendant totaled 467. *See Id.* at Ex. 14. However, Plaintiff has shown that at approximately the same time, when Defendant reported these numbers to NHTSA, it reported only 236 reports of sudden acceleration. *Id.* at Ex. 2. NHTSA later used these numbers to create the report which is at issue in this motion. Defendant has not disputed this discrepancy in its reporting of these numbers. Instead, Defendant argues that its differences in the sudden acceleration numbers refer to a different vehicle component and is therefore consistent with Defendant's submissions to NHTSA. *Id.* at 11. Specifically, Defendant contends that the difference in reported numbers relate to cruise control systems completely distinguishable in design from the cruise control system featured in Plaintiff's automobile. *Id.*

In addition, Plaintiff has presented evidence that Defendant failed to report its classifications of "No Cause Identified" in its internal studies on cruise control malfunctions. Ford instead represented to NHTSA that electronic malfunctions of this type that would cause sudden malfunctions would leave physical evidence. However, Defendant failed to mention this report which chronicled sudden acceleration incidents linked to cruise control malfunctions, which left no physical evidence after the fact. Defendant has no explanation as to why it did not report this data to NHTSA.

The Supreme Court has provided guidance for this Court in determining whether evidence is trustworthy under Fed.R.Evid. 803(8)(C). The Supreme Court refers this Court to a nonexclusive list of four factors that are helping in making a decision of trustworthiness. First, the timeliness of the investigation. Second, the investigator's skill or experience. Third, whether a hearing was held. Fourth, possible bias when reports are prepared with a view to possible litigation. *See Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 169 n. 11, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (citing *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)); Advisory Committee's Notes on Fed.R.Evid. 803(8), 28 U.S.C.App., p. 725)).

Based on the evidence that Plaintiff has produced, the Court finds that the NHTSA reports, in this case, are biased. Although NHTSA itself did not prepare these reports with a view towards possible litigation, the evidence shows that the Defendant provided information to NHTSA which was tainted. Defendant may have prepared this skewed information to NHTSA with the view towards possible litigation. In essence, Defendant did not submit accurate sudden acceleration statistics to NHTSA. There is sufficient evidence to conclude that Defendant engaged in a "cherry picking" strategy of the type of data to submit to NHTSA. For instance, it did not submit, *in toto*, the Automotive Safety Office internal report on sudden acceleration. Defendant also failed

to include its report on "No Cause Identified" problems on cruise control systems to NHTSA. NHTSA's resulting report, therefore, is not an accurate product, and within the realm of this litigation is untrustworthy.

The Court has considered whether the negative issues raised by Plaintiff can be addressed in cross-examination of Defendant's expert, and concludes that this is not an acceptable alternative because the parties will end up in a battle of experts over the methods and substance of the NHTSA report. These experts will confuse the jury and waste time in violation of Federal Rule of Evidence 403. This case is a straight forward products liability case and given the arguments and evidence provided by Plaintiff and Defendant on this issue, litigation over the NHTSA report will not tend to prove or disprove whether Defendant had notice that the vehicle was defective.

■ Based on the Court's findings of the NHTSA reports offered, the Court also finds that the ODI reports, which are also grounded heavily on information supplied by Defendant to NHTSA, lack trustworthiness. Even if the Court found that the report was trustworthy under Federal Rule of Evidence 803(8)(C), the report should be excluded under Federal Rule of Evidence 403. Plaintiff has raised so many issues regarding the ODI report's methodology, that introducing this report into evidence would do no more than needlessly confuse the jury.

The ODI report lacks trustworthiness under Fed.R.Evid. 803(8)(C). The ODI report is heavily linked to the NHTSA report and offers no new analysis of data. In particular, the ODI report offers no new testing of sudden acceleration incidents in Plaintiff's automobile model. The ODI report is simply a response by this internal NHTSA agency to a request to reopen its NHTSA study of sudden accel-

eration incidents. This request was made on July 19, 1999 by Sandy McMath, a party unrelated to this case. Mr. McMath was an attorney representing two minors who were struck by a Lincoln Town Car in an alleged sudden acceleration incident. The ODI report denies Mr. McMath's petition, affirming the NHTSA report, and concludes that electrical malfunctions could not induce acceleration unless they were multiple, simultaneous, and detectable after the fact. *See* Pls. Mem. in Supp. of Mot. in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports at 20.

■ Even if the Court found, however, that the ODI report was trustworthy under Fed.R.Evid. 803(8)(C), arguments between the parties over the methodology ODI employed in producing this study will confuse the jury. Plaintiff makes several arguments challenging the methodology ODI used in producing this report. Plaintiff argues that ODI, in response to Mr. McMath's petition, did not test the effect of electronic noise on the cruise control system. Plaintiff argues that an ODI investigator did a simple visual inspection of the automobile. Plaintiff states, "NHTSA's Mr. Young merely talked to people and 'test drove' the subject vehicle." *Id.* at 25. Plaintiff further argues that the methodology ODI used in producing this report is "predicated upon proving causation by correlating factors that in reality are not related, such as sudden acceleration rate and the installation of the shift interlock ..." *Id.* This methodology, according to Plaintiff, is generally not accepted by the engineering community.

Plaintiff further argues that ODI failed to consider pertinent materials from the scientific community, including other studies that sudden acceleration incidents are occurring due to electrical faults. Finally, Plaintiff asserts that ODI's methodology

has been criticized by another United States Government agency, the Department of Transportation's Office of Inspector General. In an Executive Summary written by this agency, the Department of Transportation's Inspector General writes, "ODI's current processes for using and analyzing data to identify potential defects and decide that a potential defect should be investigated are in need of major improvements." *Id.* at 27, Ex. 34.

Plaintiff's arguments regarding the methodology of the ODI report demonstrate that if the Court admitted the ODI report, Plaintiff and Defendant would be required to spend hours, if not days, attempting to show the reliability or unreliability of the ODI methods, or lack thereof.

Plaintiff has raised considerable issues regarding whether the ODI report meets standards within the scientific community. Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 580, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), when faced with a proffer of expert scientific testimony under Federal Rule of Evidence 702, the trial judge must consider whether the methodology is scientifically valid. Among the factors the judge must consider are whether the methodology has attracted widespread attention within the relevant widespread scientific community. *Id.* This unnecessary inquiry will not advance the fact finders inquiry in this case. Even if this report is admitted under *Daubert,* the parties will still dispute the methodology used in the report. The parties contentions over the ODI report will divert the jury's attention from the facts of this case into rendering a judgment which second guesses a government agency's work product. This would not only waste time but confuse the jury.

The Court holds that the Japanese and Canadian government reports that Defendant seeks to introduce into evidence are excluded under Rule 403 of the Federal Rules of Evidence. Plaintiff argues that these reports are untrustworthy, and therefore do not fit within the hearsay exception of Federal Rule of Evidence 803(8)(C). There is no evidence before this Court that the public records produced by the Canadian and Japanese governments are untrustworthy. Unlike the NHTSA and ODI reports, there is no evidence before this Court that the reports are biased in any way. However, admission of this evidence raises the high potential of confusion of the issues by the jury. The primary focus of the Japanese government report is on General Motors cars. The Canadian report does not focus on Ford automobiles at all, but focuses on cruise control systems in general that are not functionally similar to those used in Ford products. To admit this evidence would be to sway the jury away from the issue in this case. The issue in this case is whether Defendant had notice of the defect—sudden acceleration—in its automobiles. Defendant's manufactured automobiles, Fords, are different from General Motors cars. For these reasons, the Court concludes that any probative value of the Canadian or Japanese Government is substantially outweighed by the potential misleading of jurors and confusion of the issues, and thus will be excluded. Plaintiff's Motion in Limine is granted.

## CONCLUSION

In conclusion, the Court holds that Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits is DENIED because, upon a *de novo* examination of this issue, the Court concludes that the proffered testimony of the four witness who allegedly experienced sudden acceleration is relevant and admissible and should not be excluded at trial.

Second, the Court holds that Defendant's Motion in Limine to Exclude the "Updegrove Report" From the Trial of this Matter is GRANTED. The Updegrove Report does not sufficiently establish evidence of similar accidents to show that Defendant had notice and actual knowledge of the alleged defective condition in the automobile.

Finally, the Court holds that Plaintiff's Motion in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports is GRANTED. The Japanese and Canadian reports, while admissible under the hearsay exception for government records and relevant evidence, are excluded under Rule 403 of the Federal Rules of Evidence. Any probative value of this evidence is substantially outweighed by the danger of the misleading of the jury, as well as the potential for confusion of the issues. In addition, Plaintiff has shown sufficient proof of circumstances surrounding Defendant's submission of information to the National Highway Traffic Safety Administration ("NHTSA") and the NHTSA's Office of Defects Investigation ("ODI") to demonstrate that in this case, these reports lack trustworthiness.

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion in Limine to Exclude Evidence of Other Accidents, Incidents, Complaints, and Lawsuits is DENIED.

ORDERED that Defendant's Motion in Limine to Exclude Evidence of the Updegrove Report is GRANTED.

ORDERED that Plaintiff's Motion in Limine to Exclude NHTSA, ODI, Japanese, and Canadian Reports is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.