GENERAL MOTORS CORPORATION

V.

PETER J. LUPICA, ET AL.

Record No. 860897

April 21, 1989

Present: All the Justices

*James E. Farnham (Robert C. Rice; Jeffrey A. Standen; Hunton & Williams,* on briefs), for appellant.

*Montgomery Knight, Jr.; William R. O'Brien (William L. Dudley, Jr.; W. Robert Turner, III; Michael F. Bergan; Faye F.*

*Spence; Knight, Dudley, Pincus, Dezern & Clarke*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

Peter J. Lupica and Luann K. Roane filed separate actions against General Motors Corporation (General Motors) to recover compensatory and punitive damages for injuries they sustained when Lupica's 1978 Chevrolet Monte Carlo automobile left Interstate Highway 64 and struck a tree. Both plaintiffs alleged that General Motors negligently designed the power steering system of the automobile, that the steering system was, therefore, defective, and that the defect was a proximate cause of their injuries.

The two actions were consolidated for trial, and a jury returned a verdict in favor of both plaintiffs. The jury awarded compensatory damages of $1,000,000 to Lupica and compensatory damages of $75,000 to Roane.[1] The trial court entered judgment in accord with the verdict, and General Motors appeals.

We have limited this appeal to one of General Motors' assignments of error, *i.e.*, whether the trial court erred in admitting into evidence certain exhibits. The plaintiffs offered the exhibits to prove that General Motors had notice that other persons claimed to have experienced difficulty with General Motors' power steering systems because of the presence of particulate in the system — the defect that plaintiffs alleged existed in Lupica's automobile.

I

On July 3, 1979, Lupica and Roane left Norfolk en route to Richmond on Interstate 64. Lupica was operating the Monte Carlo automobile, and Roane was occupying the front passenger seat. The road surface was dry, and traffic was light in the area of the accident.

Approximately 500 feet east of the Ocean View exit, the automobile suddenly veered to its left, proceeded across the median, crossed the two eastbound lanes of the highway, and travelled an additional 167 feet before it struck a tree. The total distance trav-

---

[1] At the conclusion of all the evidence, the trial court struck the plaintiffs' claim of punitive damages.

ersed by the automobile from the westbound lanes of the highway to the tree was 467 feet.

At the time of the accident, the automobile's odometer showed approximately 27,000 miles. Lupica had never experienced any difficulty with the vehicle's steering system.

The steering system in Lupica's automobile did not contain a filter or screen to prevent particles from entering the system's hydraulic fluid. Consequently, particles in the fluid became wedged between cylinders within the power system, causing it to malfunction. This, in turn, caused the automobile to "self-steer" and to go out of control. The design of Lupica's steering system was identical to the power steering systems in all automobiles manufactured by General Motors since 1964.

## II

### A

General Motors contends that "[n]otice was not an element of the plaintiffs' case." This is so, General Motors asserts, because it did not "*plead affirmatively* that . . . it did not know, and could not have known, of the defective design prior to the accident giving rise to the litigation."[2] (Emphasis added.)

Suffice it to say, that in the motion for judgment, the plaintiffs alleged that General Motors knew, or in the exercise of reasonable care, should have known, that the steering mechanism was dangerous and defective, and General Motors denied the allegation. Thus, notice was an issue in the case.

### B

General Motors also contends that notice was not an issue because it admitted that, prior to the subject accident, it was aware that other persons had experienced steering problems caused by the presence of particulate in their power steering systems. At trial, out of the jury's presence, General Motors' counsel made the following statement:

---

[2] General Motors did not contend at trial that notice could be raised only by an affirmative pleading. Consequently, we will not consider this contention on appeal. Rule 5:25.

We stipulate that, and we are prepared to either work with counsel or work with the court to say that prior to the date of this accident, General Motors knew that particulate matter was found in the power steering system of this type.

Now, we then go to the question of notice with respect to alleged failures of the system due to particulate. And the reason that we believe that this — one reason we believe that the stipulation is the only appropriate way to go is we will stipulate that prior to this accident, General Motors had — was aware of claims by drivers of cars, that their cars had been caused to malfunction because of particulate in the steering gear. Now, I think the bone of contention that we have to resolve is to what extent are the plaintiffs entitled to not only show notice but to show that one of those claims, for example, that you read involved a man who was apparently paralyzed as a result of this. Are they entitled to show not only the fact of notice but the detail of the notice? Now, I simply wanted to lay that framework out because I think those are the issues that really the court has got to — we're all going to have to come to grips with as part of this analysis . . . . [T]his is the reason we would propose that resolution.

General Motors contends that this statement constitutes a judicial admission that prior to the accident in question, General Motors had knowledge of claims by other owners and operators of automobiles manufactured by General Motors that particulate in the steering gear had caused their automobiles to malfunction. We do not agree.

██ The essence of a judicial admission is its conclusiveness. To constitute a judicial admission, the admission must conclusively establish a fact in issue. The admission may not be thereafter qualified, explained, or rebutted by other evidence. Consequently, once a fact has been established by a judicial admission, evidence tending to prove the fact admitted becomes irrelevant. *See TransiLift Equipment, Ltd.* v. *Cunningham*, 234 Va. 84, 90, 360 S.E.2d 183, 186-87 (1987).

██ Clearly, the statement made by General Motors' counsel does not rise to the level of a judicial admission. At most, it was a proffer to stipulate the fact of notice — a proffer the plaintiffs

never accepted. Indeed, General Motors' counsel's understanding of the inconclusive nature and effect of his statement is demonstrated by his remark to the court that "[a]pparently, our proffer to stipulate has been rejected, and now [the plaintiffs] are going to go through specifics of complaints."

## III

General Motors further contends that, even if notice is an issue in the case, the trial court erred in admitting the documents in question.[3] General Motors asserts that "the requisite factual predicate for the admission of the exhibits . . . was totally absent."

■ "Evidence of other similar accidents or occurrences, when relevant, is admissible to show that the defendant had notice and actual knowledge of a defective condition," provided the prior accidents or occurrences happened "under substantially the same circumstances, and had been caused by the same or similar defects and dangers as those in issue." *Spurlin, Administratrix*, v. *Richardson*, 203 Va. 984, 989, 128 S.E.2d 273, 277 (1962). *Accord Roll 'R' Way Rinks* v. *Smith*, 218 Va. 321, 325, 237 S.E.2d 157, 160 (1977). Thus, "the test of admissibility is . . . *substantial similarity*." *Id.* (emphasis in original).

■ Such evidence is admissible in a products liability case to establish foreseeability and a defendant's duty to a plaintiff. When a defendant has notice and actual knowledge of a defect, it owes a duty to a plaintiff "to take the steps reasonably necessary to remedy the defect." *Id.* at 329, 237 S.E.2d at 162.

We have examined the admitted notice exhibits and conclude that most meet the "substantial similarity" test. Each exhibit meeting the test contains statements of occurrences where the power steering on a General Motors automobile manufactured between 1964 and 1978 malfunctioned due to particulate in the system that caused the automobile to "self-steer" and to go out of control.

■ One exhibit, however, that does fail the substantial similarity test is an article written by a syndicated columnist in *The Washington Post*. Although the column described prior defects in other power steering systems manufactured by General Motors, it

---

[3] The court admitted these documents for the limited purpose of showing "that other persons claimed to have experienced difficulty with power steering gears" and so instructed the jury.

did not identify specific *occurrences*. Instead, it was an exposé about the defects and their potential danger to the general public. Thus, the trial court erred in admitting this exhibit.

The trial court also erred in admitting, either in part or in toto, five additional exhibits. Plaintiffs' Exhibits 108 and 110 are General Motors' reports of preliminary investigations of accidents involving General Motors vehicles still under warranty. Exhibit 108 reports that " 'a powerful force' caused [the vehicle] to swerve sharply." However, Exhibit 108 contains documentation that "disassembly and inspection of the power steering gearbox revealed no defects due to materials or workmanship that could have been responsible in any way for [the] owner's accident." Thus, the occurrence reported in Exhibit 108 is not "substantially similar" to Lupica's steering problem because no particulate, indeed, no defect at all, was found in that steering system. Similarly, nothing in Exhibit 110 links foreign matter in the steering system to the accident reported therein.

Two other exhibits, numbers 109 and 136, also were erroneously admitted, at least in part. These exhibits contain extraneous information about, for example, where the drivers were going when the accident occurred and the events preceding the discovery of foreign matter in the steering system. The only relevant information is that the driver owned a General Motors vehicle manufactured between the years in question and experienced a steering problem traced to foreign matter in the steering system. Any other information is superfluous and, therefore, should be obliterated before admission into evidence.

Finally, Exhibit 137 is merely a General Motors reply to an automobile owner's request for financial assistance and is entirely without substantial similarity to Lupica's accident. Exhibit 137, therefore, should not have been admitted.

## IV

Finally, General Motors contends that, even if notice is an issue in the case, the exhibits should have been excluded because their probative value was outweighed by their prejudicial effect.

Generally, "[a]n assessment of the prejudicial effect of evidence against its probative value is a matter largely within the discretion of the trial court." *Gray* v. *Graham*, 231 Va. 1, 10, 341 S.E.2d 153, 158 (1986). *Accord Coe* v. *Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986); *Seilheimer* v. *Melville*, 224

Va. 323, 327-28, 295 S.E.2d 896, 898-99 (1982). Because of the possibility of prejudice that may arise from the admission of evidence of other accidents in negligence and product liability cases, however, a trial court should strictly scrutinize such evidence. Thus, when documents are proffered to prove that a defendant had notice of prior, substantially similar occurrences, a trial court should confine the admitted material to information germane to notice and excise material that is superfluous, irrelevant, or inflammatory.

In the present case, the record indicates that the trial court did scrutinize the various notice documents proffered by the plaintiffs. Indeed, a number of them were refused, and most of those admitted had portions excised by the court.

Nevertheless, the court did admit at least one exhibit that has the probability of greatly prejudicing the jury against General Motors. That exhibit is the previously mentioned syndicated column. The article states in part:

> *More than 1.3 million Cadillacs are loose on the nation's highways with potentially dangerous defects in their power steering, which could have been corrected for pennies.*
>
> As with so many engineering problems, the defect is linked to one tiny part. In the Cadillac, there is only one screen to filter out the metal chips that can ruin power steering systems instead of the two screens GM uses in some cheaper cars.
>
> When metal, sand or other tiny particles are not fully filtered from the steering mechanism's valves, the steering wheel can lock, stick briefly or even "self-steer." *The result, of course, may be a wildly swerving auto, totally out of control.*

(Emphasis added.)

We held elsewhere in this opinion that the syndicated column was inadmissible because it was a general statement — not a report of a specific occurrence. An even more compelling reason for excluding the exhibit is the language we have italicized — language that is highly inflammatory. We cannot say that the admission of this exhibit was merely cumulative and therefore harmless error. The probability of prejudice is too great.

## V

For the reasons stated, we will reverse the trial court's judgment and remand the case for a new trial consistent with the views expressed herein.

*Reversed and remanded.*